## KATE S. FOX *v.* HOWARD R. PAUL ET AL.

[No. 23, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Henry Vogt,* for the appellant.

*Gwynn Nelson* and *John J. Timanus,* submitting on brief, for the appellees.

Pattison, J., delivered the opinion of the Court.

The appellant, Kate S. Fox, was, in the year 1915, the owner of five and three-quarter acres of land, lying on the east side of the Reisterstown Road, in Baltimore County, Maryland. On the south of the land owned by the appellant is what is described as the "Church Lot," and the lands at that time owned by Hugh Albert Cooper; the church lot being immediately upon the Reisterstown Road and the Cooper land being in the rear of the church lot. Between the appellant's land and the church property is an open road of the width of twenty-five feet, extending back a distance of three hundred and thirty feet to the rear line of the church lot. The road thereafter narrows to about one-half of this width, and extends back to the depth of appellant's lot, as it was in 1915. The northern line of the road is unbroken. The break caused by the lessening of its width is on the southern line of the roadway at the rear end of the church property and at the commencement of the Cooper land.

On December 21st, 1915, the appellant, Mrs. Fox, sold and conveyed unto the appellees, Howard R. Paul and wife, the rear portion of her lot, containing one acre of land. After describing the land conveyed by courses and distances, metes and bounds, the following language is used: "Together with the buildings and improvements thereupon erected, made or being and all and every the rights, roads, ways, waters, privileges, appurtenances and advantages to the same belonging or anywise appertaining."

The eastward end of the roadway above mentioned was included within the lot of land conveyed by Mrs. Fox to Paul and wife, it being claimed by her, at the time, that she was seised of the same in fee.

On May 22nd, 1922, Mrs. Fox sold and conveyed unto George W. Morris and Jennie S. Morris, his wife, two lots of land, the first being the northern part of the remainder of the said five and three-quarter acres, which extended from the Reisterstown Road to the lot of land conveyed to Paul and wife, containing one and seventy-nine one hundredths acres of land, and the second being the rear part of what

was thereafter left of the Fox lot, adjoining on the east the land conveyed to Paul and wife, containing forty-two one hundredths acres of land. In 1916 the Burns land, located at the end of said roadway, and on the east of the lot of land conveyed by Mrs. Fox to Paul and wife, became the property of one Charles G. Wanner; and the Cooper property to the south of said roadway, in 1918, became the property of Jennie S. Morris, one of the grantees in the aforesaid grant from Mrs. Fox.

A plat showing the location of the road and the different properties mentioned is found in the brief of the appellant, and the reporter is asked to insert the same in the report of this case.

On April 23rd, 1928, Howard Paul and wife filed their bill, in the Circuit Court for Baltimore County, against Kate S. Fox, George W. Morris and Jennie S. Morris, his wife, alleging therein that, when they purchased the lot of land from Kate S. Fox, they were told by her that the outlines of her property included said roadway from the lot conveyed to them to the Reisterstown Road, and upon this representation the plaintiffs relied; that, after using this roadway for a number of years, they, about two years prior

to the filing of the bill, were informed by Charles G. Wanner that he was the exclusive owner of said roadway and that neither the plaintiffs nor the said Kate S. Fox had the right to use the same, and within the last year he was warned by Wanner not "to trespass on his road". In addition thereto he placed obstructions thereon. Thereafter the plaintiffs had the road and the adjoining property surveyed, and they were advised that they had no right to use said road.

The bill then alleged that the plaintiffs' property "does not abut on any public highway," and, as discovered by them "through examination of title by an attorney, and by a survey made * * * they have no outlet from their property to a public highway, except over a stranger in title, that they have requested the said Kate S. Fox to lay out a convenient road from their property to a public highway, that the said Kate S. Fox has declined to so do"; that she has "planted trees and placed other obstructions over her property so that it is impossible for the plaintiffs to get from their property to a public highway with horses and wagons and other means of conveyance" and, though requested to remove such obstructions, she has declined to do so; that the said Morris and wife acquired the land conveyed to them by Mrs. Fox "subject to any implied easement of a road by necessity" which the plaintiffs might be entitled to. The bill concluded with a prayer asking, first, that a mandatory injunction be issued "requiring the defendants to lay out a convenient road from their tract of land to a public highway"; and, second, "for such other and further relief as their case may require."

The defendant, Kate S. Fox, in her answer to the bill, denied that the plaintiffs, as the owners of the land, under her grant to them, have no access to a public highway, and avers that they, under such grant, have the right to use the roadway heretofore mentioned and described to the Reisterstown Road, and that they have used said road as an outlet from their land to said public road since the date of her grant to them. That before such time she and her predecessors in title used said road for more than twenty years. That the use of the roadway

by her and her predecessors was under a claim of ownership thereof in fee, and that in so doing they were "not merely permissive users"; and, should it be found, as she is now advised, that the road is not within the lines of her land, she nevertheless has acquired a prescriptive right to use it as appurtenant to her adjoining property, which right she continues to exercise. That it was under her grant to them that the plaintiffs, since December 21st, 1915, "have continuously and uninterruptedly" used said roadway. It is further averred by her in her answer that "this action is nothing more than a collusive suit between the complainants and the defendants George W. Morris and Jennie S. Morris, his wife, who own a large tract of land which abuts on the place where the so-called way of necessity is sought to be obtained by this bill of complaint filed in this case, and that for the purpose of developing and selling lots and enhancing the value of their land, the defendants George W. Morris and wife, through the action of the complainants herein, are seeking to procure an extensive highway through their development at the expense of this defendant Kate S. Fox, whose land and buildings obstruct and interfere with their plans."

The bill was also answered by George W. Morris and Jennie S. Morris, his wife.

In the deed to Morris and wife from Mrs. Fox, the beginning point of the secondly described lot therein, is located "at a square stone situated on the south side of a lane twenty-four feet wide, which stone is at the southeastern corner of a parcel of land conveyed by Kate S. Fox to Howard R. Paul and wife." And at the conclusion of the deed are the provisions: "Together with the buildings, etc. and also the right to use in common with others, the lane twenty-four feet wide, extending from the southeast corner of the lot secondly described (the one to which we have referred) to the Reisterstown Road." "To have and to hold, etc. subject to the leaving open of the lane twenty-four feet wide along the southernmost outline of the parcel hereinbefore secondly described." As shown by the survey and plat, the point of beginning was

not at the southeast, but the southwest corner, or, more properly speaking, the south corner of the Paul lot. The lane referred to was an existing lane, about thirteen feet wide, its width being clearly defined by a fence on each side of it, and it was the lane of this width that was to be kept open.

It is upon the allusions to this lane of twenty-four feet in width that defendants Morris and wife base their claim or contention that the grantor was to lay out a road of that width, not only through her remaining land, but through the land granted to them, from the line of the Paul lot to the Reisterstown Road. In respect to this contention they aver in their answer "that the said outlet or road twenty-four feet wide to be opened and laid out, as aforesaid, to the Reisterstown turnpike road, has never been so laid out or opened by the said defendant, Kate S. Fox, although frequently requested so to do, and it has been recently discovered that the said defendant, Kate S. Fox, included in the description," in the lands granted to them, "land in which she had no right, title and interest, and for which she collected the purchase money." It is then averred and charged in their answer "that the said defendant, Kate S. Fox, should be compelled not only to lay out the said outlet or road, but also to account to them for the money collected by and paid to her for so much of the land conveyed by her to them to which she had no right, title and interest."

After hearing considerable evidence, the court, as stated in his opinion, reached the conclusion that the fee in the roadway, twelve or thirteen feet in width, bounded on the north by the property of Mrs. Fox, and running from the Wanner lands to the Reisterstown Road, was held by Wanner, and not by Mrs. Fox, and as Wanner has refused the plaintiffs the use of the roadway, the latters' property "is completely bottled up," and the court in his opinion said: "I find that she (Mrs. Fox) has failed to prove a prescriptive right in this lane, particularly so to that part of it, where it leaves what I have called the Church Lane. But, even if she had succeeded in proving a prescriptive right of way over the

Wanner land, how can the court bind Wanner, who is not a party to this case? Paul is entitled to a right of way to the Reisterstown Road." And as a result of this finding, the court decreed unto the plaintiffs a roadway, as a way of necessity, twelve feet and four inches in width over the southernmost or southeasternmost part of the lands of Morris and wife and Mrs. Fox, from the southwestern corner of the Paul lot to the Reisterstown Road. It was from that decree of the court that the appeal in this case was taken.

A right to a way of necessity over the lands of the grantor to a public road or highway exists in favor of the grantee when the land granted to him is wholly surrounded by the land of the grantor, or partly by the land of the grantor and partly by the land of a stranger, if there is no other way or outlet from the grantee's land to a public highway. This right, in such case, does not arise from an express grant, but from a presumption that it was the intention of the parties that the grantee should have access to his lands over the lands of the grantor. *McTavish v. Carroll,* 7 Md. 351; *Du Val v. Du Val,* 21 Md. 155; *Oliver v. Hook,* 47 Md. 301; *Zimmerman v. Cockey,* 118 Md. 491; *Duvall v. Ridout,* 124 Md. 195; *Fairchild v. Stewart,* 117 Iowa, 734; *Words & Phrases,* vol. 8, page 7419; see note to *German Savings & L. Co. v. Gordon,* 26 L. R. A. (N. S.), page 352, and cases thereunder.

The question raised by the bill and answer, in this case, is whether the granted land is surrounded by the lands of the grantor and others, and if so, have the grantees any road or way therefrom to a public road or highway?

That such land is surrounded by the lands of the grantor and others does not seem to be denied, though it is denied that they have no right of way from their land to a public road or highway, and, in support of that denial, the defendant alleges that a way was provided in the grant to them of an easement in the above mentioned road or lane, in the bed of which she was the fee simple owner, or had the prescriptive right to use it. In answer to this claim, the plaintiff contends that Wanner was the fee simple owner of the road and that

the defendant was neither its owner in fee, nor the holder of an easement therein enabling her to grant to them the right to use it, and consequently her grant, without title, was ineffectual.

The burden of proving the essential elements entitling a plaintiff to a way of necessity is upon him, that is, to show that the lands conveyed to him are surrounded by the lands of the grantor, or by the lands of the grantor and others, and that he has no way to reach the public highway or road, except through the lands of the grantor.

There was, at the time of the grant to Paul, an open road to the south of and along the entire southern line of the appellant's land to the property now owned by Wanner. It was, as claimed by Mrs. Fox, used as a way appurtenant to all her said lot of land as it existed at the time of her grant to Paul and wife, and it was, at the same time, used by the then owners and occupants of the Wanner land as a way of ingress and egress to and from the Reisterstown Road. It was thought and claimed by Mrs. Fox that she was the owner of the fee in the bed of the road, and, under such claim thereto, she and her predecessors in title had used it for a period of more than twenty years. It is now alleged, however, that she and her predecessors in title were never the owners in fee of the said road, but, should this be true, she, as claimed by her, has a prescriptive right to use it. If, at the time of the grant to Paul and wife, she was the owner of the fee in the bed of the road, or had a prescriptive right to use it, her right to use such roadway, under the provision contained in the deed, "together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining," passed with the land specifically described and conveyed by said deed. *Oliver v. Hook,* 47 Md. 301.

Evidence was offered as to the ownership in fee of the road and also as to the prescriptive right of Mrs. Fox to use it.

Mrs. Fox, at the time she testified, was sixty-six years of age. She was married in 1897. After her marriage, she, with her husband, occupied the premises now owned and oc-

cupied by her, and she has continued to occupy the same until the present time, a period of thirty-two years. Before her marriage, she lived about one mile from this property and had known it and its surroundings since childhood. There is upon her property a building now used as a garage, located within a few feet of the lane in question, and at least seventy-five feet from the Reisterstown Road. In this building they kept their carriages until automobiles came into use, and, since that time, it has been used as a garage. In going from their premises in their carriage or automobile, they went out upon this road or lane, and on it they proceeded to the Reisterstown Road. This she and her predecessors have done for a period of more than fifty years.

She testified that, when the rear portion of her lot was in pasture or cultivation, they used this road or lane in driving their stock to the pasture, or in going thereto with their teams for the purpose of cultivation, and also used it in hauling therefrom the produce raised thereon; that, in going to and from such rear portion of their lot, they passed through a gate near the extreme end of the lane. In addition to this use, she testified that they, at times, when it was needed, repaired the road or lane, not only between the garage and the Reisterstown Road, but also that part of it lying east of the garage, extending to the rear limits of their property. And, although it is stated in the bill of complaint that she was now advised that she was not the owner of the road or lane, she, while on the stand, persisted that she was still the owner of it, and it was always so understood, not only by her, but by her husband, father-in-law, and others.

George W. Fox, a brother of the defendant's husband, now seventy-four years of age, testified that his father lived on the property now owned by the defendant, and it was there that he was born and where he lived until he was seventeen years of age. Since that time he has lived at Owing's Mill and at McDonogh, the former place being not more than three-quarters of a mile away. That he always understood that the lane on the south of defendant's property was owned by his father, and afterwards by his successors in title. When a

boy, he recalled the fact that his father and Mr. Reese, the former owner of the Wanner lands, put up the bars across the lane at the rear end of the church lot, and fenced the lane on each side. "There was a fence on both sides, we claimed both fences, or my Daddy, to the property," and "he (his father) used it * * * for his own convenience, and the road was all on his property down as far as the lot, as far as he went."

John Bernard Hoff, who married defendant's daughter, sixteen years before the time of his testifying, stated that he had lived upon the property for that length of time. In his testimony he located the garage, stating that it was two hundred feet from the Reisterstown Road and one hundred and fifty feet from the rear end of the church lot. He testified that the lane or road in question was used daily by them in going in and out from the garage in their automobile. He also testified that the road east of the garage was used in driving cattle to and from the pasture lands east of the end of the lane.

Two witnesses were placed upon the stand by the plaintiff, who were asked about the use of this road by the defendant and her predecessors in title. They testified that they did not know of the defendant's alleged use of the road east of the garage. The only ones that used it, so far as they knew, were Reese and his successors in title. They never knew of any gate on the north side of the lane near its east end, through which the defendant could enter her lands from the lane, but neither of them denied that the defendant and her predecessors in title used that part of the land from the garage to the Reisterstown Road.

Charles G. Wanner, when placed upon the stand by the plaintiff, testified that the road in question was thirteen feet in width and led out from his place to the car line on the Reisterstown Road. He also testified that he told Paul, so early as 1915, that he had no right to use the road, but Paul has continued to use it and still uses it. After moving there, Paul took down the gate at the end of the road and took the fence down on the north side of the road "nearly up to Mrs.

Fox." He also would leave his car in the road. "On more than one occasion I went down there the cars were standing in such a way I could not pass and had barbed wire strung up there, and I tore my clothes and cut my hat." That Paul would drive dangerously close to his boy, and that he warned Paul not to use the road and Paul cursed and threatened to take his life. Wanner was asked if he had ever placed stones in the road; he said he had dumped two loads of stones "so that it could be packed down"; that it was not done to prevent Paul from using the road, and he never put any obstructions there until the time Paul threatened his life. And when asked if he ever told him not to use the road, he said: "I wrote him a letter and told him I did not want him to use the road under those conditions." He further stated that he had "not kept anybody off the road"; that he only asked them to keep the road clear so that it could be used by him. On being asked if the threat made on his life by Paul was the cause of his denial to Paul of the use of the road, or land, he replied: "I have never denied him the use of the road. He has been using it right along. I told him, as long as he acted right, I would not object, but I wanted him to keep the cars out of the road in case of fire, or needed a doctor. * * * No; the threat on my life was because Mr. Paul was trying to get a roadway there through Mr. Morris. Mr. Morris is more back of this thing than Mr. Paul is. Mr. Morris has done everything through Mr. Paul about damage and threatening me in every way possible, and that is the result of Mr. Paul's talk to me." The threat was made on March 16th, 1926.

We are now to consider whether the plaintiffs, upon the facts stated, are entitled to the relief sought by the bill. The authorities generally agree that a way of necessity may be located by a court of equity where the right to such way is clear and not disputed. *Zimmerman v. Cockey,* 118 Md. 491; *McKenney v. McKenney,* 216 Mass. 248; *Old Colony Street R. Co. v. Phillips,* 207 Mass. 174; *McMillan v. McKee,* 129 Tenn. 39, Annot. Cas. 1916A, 145; 19 *C. J.,* sec. 5, p. 973, and cases cited thereunder. In *Zimmerman v.*

*Cockey, supra,* the question there appears to have been one of location and not one where the right to a way of necessity was disputed. The case was considered and passed upon by this court, though there was no discussion of the question as to the jurisdiction of the equity court to grant the relief sought, as there was no objection made thereto, at least so far as the opinion discloses.

Where the right to a way of necessity is not clear and is disputed, it has been held in a number of cases that the equity court is ordinarily without jurisdiction to lay down a way of necessity. *Taylor v. Wright,* 76 N. J. Eq. 121; *Mason v. Ross,* 77 N. J. Eq. 270. In *Mason v. Ross, supra,* it was said: "The question whether a right of way over the lands of one person exists in favor of another is a purely legal one, and where the existence of such an easement is in dispute, the proper tribunal in which to settle it, is a court of law. It was so declared by this court in a case of *Hart v. Leonard,* 42 N. J. Eq. 416, and again in *Todd v. Staats,* 60 N. J. Eq. 512. It is true that special circumstances may sometimes exist which will justify a court of equity in determining a dispute over a private legal right in land and in enforcing that right, if found to exist, but such cases are rare."

After a careful examination of the law applicable to the questions here involved, we are of the opinion that ordinarily a court of equity is without jurisdiction to locate a way of necessity, when the right to such way is disputed, but while this is the general rule, there may be cases where the jurisdiction of a court of equity may be invoked and its powers exercised to avoid a multiplicity of suits at law, followed by a possibility of confusion in results, to accomplish the full relief sought. *Holland v. Baltimore,* 11 Md. 186; 1 *Beach, Modern Equity Jurisprudence,* sec. 22; *McMillan v. McKee, supra.*

In such cases, all persons whose interests may be affected by the decision of the question raised should be made parties to the proceedings, in order that they may be in a position to prosecute or defend their rights, and that they may be concluded by the decision.

In this case, the plaintiffs must be denied the relief sought, even though it be held that the case falls within the class of cases mentioned, as the plaintiffs have failed to make all persons parties to the proceedings, who should have been made parties thereto, and because they have failed to show that they have no road or way from their land to the public road.

In their bill they allege that the way or road in question was pointed out to them by the grantor and that they were told by her that the right to use such road passed to them under the grant. She has in no way attempted to revoke that grant, nor has she interfered with them in the use of the road, but they, on the contrary, have assailed her right to grant to them the use of it, and allege that such right is in another, Charles G. Wanner, who has refused them the right to use it and, because of such fact, they have no way out from their land.

It is not shown that Mrs. Fox did not have the right to convey to them the use of said road or lane, or that they have been prohibited by Wanner from using it. On the contrary, they have been permitted by Wanner to use it, and they are still using it. It is true Wanner has warned them not to use it, but this, as stated by Wanner, was because of Paul's conduct in the use of it, and his conduct towards him. As said by Wanner in his testimony: "I have never denied him the use of the road; he has been using it right along; if he acted right, I would not object, but I want him to keep the cars out of the road."

The decree appealed from will be reversed and the bill dismissed.

*Decree reversed and bill dismissed, with costs to the appellants.*