591 S.E.2d 34

**Troy K. GOODWIN and Fonda E. Goodwin, Appellants,**

**v.**

**Martha E. JOHNSON and Ernie Johnson, Respondents.**

**No. 3696.**

Court of Appeals of South Carolina.

Heard Nov. 4, 2003.

Decided Nov. 17, 2003.

Rehearing Denied Jan. 28, 2004.

Sean K. Trundy, of Charleston, for Appellants.

Steven L. Smith and Wm. Mark Koontz, both of Charleston, for Respondents.

ANDERSON, J.:

Troy K. Goodwin and Fonda E. Goodwin (the Goodwins) appeal the master-in-equity's order relocating their easement by necessity. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The Goodwins originally brought this cause of action against Martha and Ernie Johnson (the Johnsons) on December 18, 1996, in an effort to establish an easement across the Johnsons' property. The disputed property consisted of a road that ran from a public highway through the Johnsons' property to the Goodwins' property. The Goodwins argued they were entitled to the easement under several theories, including: (1) an easement by a recorded document; (2) an easement by necessity; and (3) an easement by public dedication.

After hearing from the parties, the master granted the Goodwins an easement by necessity and an easement by prescription. The master found the location of the easement or road was as set forth in a plat recorded in the Recorder of Deeds Office in Berkeley County.

The Johnsons appealed the master's finding to the Court of Appeals. An opinion was issued on June 19, 2001. *See Goodwin v. Johnson,* Op. No.2001–UP–323 (S.C. Ct.App. filed June 19, 2001). This Court affirmed the master's decision by finding there was evidence in the record to support his determination that an easement by necessity existed. *Id.* We declined to address further grounds.

Following our decision, the Johnsons moved to clarify the master's order and the Goodwins asked permission to execute on the judgment. The Johnsons desired to relocate the easement from its current location to another part of their property due to its proximity to their home and dangers it created for their children and pets. The Goodwins claimed that relocating the easement would make it both unsafe and unusable, as it would no longer link with a passable portion of their property.

In an order dated June 18, 2002, the master granted the Johnsons' request and ordered the construction of a new road along the side of the Johnsons' property.

## ISSUE

Does a court of equity possess the plenary power to relocate an existing easement by necessity?

### STANDARD OF REVIEW

The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury. *Slear v. Hanna,* 329 S.C. 407, 496 S.E.2d 633 (1998); *Pittman v. Lowther,* 355 S.C. 536, 586 S.E.2d 149 (Ct.App. 2003); *Revis v. Barrett,* 321 S.C. 206, 467 S.E.2d 460 (Ct.App. 1996); *Smith v. Commissioners of Pub. Works,* 312 S.C. 460, 441 S.E.2d 331 (Ct.App.1994); *see also Jowers v. Hornsby,* 292 S.C. 549, 357 S.E.2d 710 (1987) (decision of trier of fact as to whether or not easement exists will be reviewed by Supreme Court as an action at law); *Hartley v. John Wesley United Methodist Church,* 355 S.C. 145, 584 S.E.2d 386 (Ct.App.2003) (determination of existence of easement is action at law; establishing existence of easement is question of fact in law action). In an action at law tried without a jury, the judge's

findings of fact will not be disturbed on appeal unless there is no evidence to support the judge's finding. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

■ The question of the extent of a grant of an easement is an action in equity. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997); *Lighthouse Tennis Club Village Horizontal Property Regime LXVI v. South Island Pub. Serv. Dist.,* 355 S.C. 529, 586 S.E.2d 146 (Ct.App.2003); *Eldridge v. City of Greenwood,* 331 S.C. 398, 503 S.E.2d 191 (Ct.App. 1998); *Smith,* 312 S.C. at 465, 441 S.E.2d at 334. "Thus, this Court may take its own view of the evidence." *Tupper,* 326 S.C. at 323, 487 S.E.2d at 190; *see also Binkley v. Rabon Creek Watershed Conservation Dist.,* 348 S.C. 58, 558 S.E.2d 902 (Ct.App.2001) (scope of easement is equitable matter in which reviewing court may take its own view of preponderance of evidence).

### *LAW/ANALYSIS*

■ The Goodwins contend the master did not have the authority to move an existing easement, or alternatively, even if he did have the authority, the master erred in doing so under the facts of this particular case. We disagree.

The issue asseverated in this case is novel. Irrefutably, the question presented is of particular importance to trial courts.

The traditional rule concerning easements is that "the location of an easement once selected or fixed cannot be changed by either the landowner or the easement owner without the other's consent, which can be express or implied." 25 Am. Jur.2d *Easements and Licenses* § 79 (1996) (footnotes omitted). Thus, "[a]fter a way has been located, it cannot be changed by either party without the consent of the other, even if the way so located becomes detrimental to the use and convenience of the servient estate." *Id.; see also Samuelson v. Alvarado,* 847 S.W.2d 319, 323 (Tex.Ct.App.1993) ("Once established, the location of the easement cannot be changed by either the easement owner or the servient owner without the consent of both parties, even though the use of the easement where located becomes detrimental to the use of the servient estate."); 28A C.J.S. *Easements* § 157 (1996) ("As a general rule, in the absence of statutes to the contrary, the location of

an easement cannot be changed by either party without the other's consent, after it has been once established either by the express terms of the grant or by the acts of the parties, except under the authority of an express or implied grant or reservation to this effect.") (footnotes omitted); F.M. English, Annotation, *Relocation of Easements,* 80 A.L.R.2d 743 § 4 (1961) ("Language is frequently found in the cases to the general effect that an easement, once located, cannot be relocated without the consent of the parties thereto.").

Although South Carolina courts have yet to address this particular issue, the Goodwins cite several cases from other jurisdictions in support of the traditional rule regarding easements, including *MacMeekin v. Low Income Hous. Inst., Inc.,* 111 Wash.App. 188, 45 P.3d 570 (2002), and *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839 (1997). In *MacMeekin,* an action to quiet title to an easement, the Court of Appeals of Washington was confronted with the issue of whether a court had the power to relocate an existing easement by prescription without the permission of the owner of the dominant estate. After reviewing cases from other jurisdictions, the court decided: "Washington adheres to the traditional rule that easements, *however created,* are property rights, and as such are not subject to relocation absent the consent of both parties." *MacMeekin,* 45 P.3d at 579 (emphasis added).

*Soderberg,* while acknowledging the general rule, ultimately adopted a position inconsistent with that championed by the Goodwins. *See Soderberg,* 687 A.2d at 842. In that case, the owners of the servient parcel brought an action against the owners of the dominant parcel seeking to quiet title or, in the alternative, to relocate an easement that was established by prescription. The easement in issue was a road in close proximity to the servient owner's home that posed dangers to their small children. *Id.* at 841. In contrast to *MacMeekin,* the Superior Court of Pennsylvania adopted the minority rule, holding "a court may compel relocation of an easement if that relocation would not substantially interfere with the easement holder's use and enjoyment of the right of way and it advances the interest of justice." *Id.* at 844.

Many of the cases adopting the traditional rule deal with express easements—not with easements created by necessity. We recognize that it *should be* more difficult to relocate an express easement, as it is akin to a contract and is bargained for by the parties. *MacMeekin,* cited by the Goodwins for the traditional approach, supports this position by acknowledging that most of the cases addressing the issue of whether a court can relocate an easement without the consent of both parties deal with express easements. *MacMeekin,* 45 P.3d at 575–76.

Before adopting the minority view, the *Soderberg* court explained:

> Prescriptive easements are . . . quite different from express grant easements. Express grant easements, once acquired, are much more difficult to alter. A prescriptive easement, however, differs markedly from an express grant easement, because the prescriptive easement is not fixed by agreement between the parties or their predecessors in interest.

*Soderberg,* 687 A.2d at 843 n. 3 (citation omitted). The court further expounded that "alterations of easements expressly granted will be interpreted under contract law principles; permission to alter must be intended by words or meaning of grant." *Id.* (citation omitted). The court found prescriptive easements, because they are not fixed by agreement among the parties, should be handled differently than express easements. *Id.* We agree with this reasoning and conclude the same is true with easements created by necessity.

The approach adopted by the *Soderberg* court is consonant with the position adopted by the drafters of the Restatement (Third) of Property: Servitudes § 4.8 (2000), which provides that, in certain situations, the owner of the servient estate can relocate an easement unilaterally. Section 4.8 of the Restatement reads in pertinent part:

> Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows:
>
> . . . .
>
> (3) Unless expressly denied by the terms of an easement, . . . the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an

easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

(a) significantly lessen the utility of the easement,

(b) increase the burdens on the owner of the easement in its use and enjoyment, or

(c) frustrate the purpose for which the easement was created.

*Id.*

Authority exists specifically supporting the power of a court sitting in equity to relocate easements created by necessity. *See* William B. Johnson, Annotation, *Locating Easement of Way Created by Necessity,* 36 A.L.R.4th 769 § 2 (1985) (once an easement by necessity's location has been fixed, it cannot be changed except by agreement of the parties *or by a court for equitable reasons* ). The Court of Appeals of Maryland addressed this issue in *Hancock v. Henderson,* 236 Md. 98, 202 A.2d 599 (1964). In that case, current owners of a dominant estate brought an action to prevent the servient owners from obstructing a claimed right-of-way. *Id.* at 600. The court found the dominant owners were entitled to an easement by necessity for the purpose of ingress and egress to and from their land. *Id.* at 603. Although a road was located on the servient estate in the past for this purpose, the road had fallen into disrepair and there was evidence it had not been used for many years. *Id.* The court articulated: "We do not think this slight activity so long ago was sufficient to establish with exactitude the location of an easement claimed now by a remote grantee of the dominant tract." *Id.* Because the current location of the road was located in such a way as to be considerably inconvenient to the servient owner and the uses of the respective properties had changed over the years, the court remanded the case to the trial court for an equitable determination of where the easement should be located. *Id.* Although on remand the parties had the option of working out a location on their own, the appellate court stated that in the absence of agreement, the trial court "should exercise jurisdiction in locating an adequate right of way over the servient tenement in a manner so as to permit ingress and egress of

vehicular traffic, but also in a manner least burdensome to the servient tenement." *Id.*

In *Michael v. Needham*, 39 Md.App. 271, 384 A.2d 473 (1978), after determining that the dominant owner was entitled to an easement by necessity, the Court of Special Appeals of Maryland concluded that because the servient owner had expended a considerable amount of funds in making improvements to his property in the vicinity where the easement was claimed to lie, the case should be remanded to determine the best location for the easement. *Id.* at 479. As in *Hancock*, the court held that, in the absence of agreement among the parties, "it will be the responsibility of the chancellor to take such testimony as might be required and to locate the right of way after due consideration of the equities of the matter." *Id.*

Significantly, the facts surrounding the current dispute are remarkably similar to those discussed in *Hancock*. Both concern easements created by necessity and relate to roads that were commonly used at one time but had since fallen into disrepair. *Hancock*, 202 A.2d at 603. In *Hancock*, the old road dissected the servient owner's property; whereas, in this case the old road comes within ten feet of the Johnsons' home. *Id.* Additionally, the Goodwins testified they have never used the old road to access their property. It is clear from the testimony presented at trial that the Goodwins were aware when they bought the property that there may be problems obtaining access. Finally, as in *Hancock*, the use to which the servient land was put has changed since the prior road was used as a way to access the property purchased by the Goodwins. In the past, the land was farmland. Currently, the land serves as the Johnson home.

■ The factors articulated by the drafters of the Restatement provide excellent guidance to courts of equity when faced with the task of relocating an easement created by necessity. A court using its equity powers may relocate an easement when the relocation will not "(a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created." Restatement (Third) of Property: Servitudes § 4.8.

Indubitably, a relocation of the easement in question will not significantly lessen its utility. The Goodwins have never used the old road. Although Mrs. Goodwin testified they planned on building a house on the land, they have yet to do so and it remains undeveloped property. Relocation of the easement could not increase the burden on the Goodwins because they have never used any easement through the Johnsons' property. Finally, relocation of the easement will not frustrate the purpose for which the easement was created. The easement was created so the Goodwins would have a way into and out of their property. The master's order establishing the new road mandated that it be constructed to South Carolina Department of Transportation standards completely at the Johnsons' expense.

The Goodwins maintain they will be burdened by the master's location of the new road. They allege the new road will not link up with a passable portion of their property and the new road meets the public highway in such a way that it is unsafe when entering and exiting. Frankly, there is no evidence in the record to support these assertions. While it may be true that relocation of the road will prevent it from linking with the old road on the Goodwins' property, because the property at this point is nothing more than an undeveloped lot, we fail to see how this significantly burdens the Goodwins. Because the master mandated that the new road meet requirements imposed by the South Carolina Department of Transportation, and there is no evidence in the record to support the Goodwins' contention that the entrance of the new road will be unsafe, we agree with the master's decision.

## CONCLUSION

We align South Carolina with those jurisdictions providing that courts of equity have the power to relocate existing easements created by necessity. We adopt the minority rule that a court of equity possesses the plenary power to relocate an easement by necessity when the evidence supports such a move.

Accordingly, the master-in-equity's decision is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.