646 S.E.2d 177

**John R. SHEPPARD and William J. Sheppard, Respondents,**

v.

**JUSTIN ENTERPRISES, a South Carolina General Partnership, Russ Pye and Lee Pye, Appellants.**

No. 4245.

Court of Appeals of South Carolina.

Heard April 10, 2007.
Decided May 14, 2007.
Rehearing Denied June 28, 2007.

Bonnie Travaglio Hunt and Michael A. Timbes, both of Charleston, for Appellants.

G. Thomas Hill, of Ravenel, for Respondents.

STILWELL, J.

Russ Pye, Lee Pye, and Justin Enterprises (collectively Appellants) relocated an easement appurtenant to property now owned by John R. and William J. Sheppard. On appeal, we affirm the circuit court's order requiring Appellants to restore the easement to its original location.

## FACTS

Appellants and the Sheppards own adjacent tracts of land, which were both derived from a larger tract known as Encampment Plantation. The Sheppards' tract (the dominant estate) includes a right of ingress and egress across Appellants' tract (the servient estate). This easement originated in a deed conveying to John Carlton Fox the tract the Sheppards now own. The deed conveyed "the right to the use and enjoyment of the Avenue leading from Highway # 17 to the property above described ... for the use of all present and future owners of said property...."

The deed to Fox also references an attached plat that shows the "Avenue." Prior to the easement's relocation, access to the dominant estate required one to turn from Highway 17 onto the avenue and continue straight until reaching a cul-de-sac on the servient estate. At that point, one would turn left onto an old dirt road, then almost immediately turn right onto a separate access road, crossing other property before arriving at the dominant estate.

In September 2001, Appellants blocked the access to the old dirt road from the cul-de-sac and created a new road between the avenue and the access road. Consequently, when attempting to access the dominant estate, the Sheppards must turn onto the avenue from Highway 17 and make a slight left turn onto the new road. The new road connects with the old dirt road at a point closer to the access road. From the new road, the Sheppards must turn left onto the old dirt road. The

right turn from the old dirt road onto the access road remains the same.

On May 16, 2002, Developments Unlimited, LLC, the Sheppards' immediate predecessor in title, filed suit against Appellants, requesting the circuit court require Appellants to remove their obstructions to the original access point and restore this portion of the easement to its previous condition. The Sheppards were substituted as plaintiffs when they purchased the dominant estate from Developments Unlimited. After a hearing on the merits, the circuit court granted the relief the Sheppards requested.

## STANDARD OF REVIEW

■ The determination of the extent of a grant of an easement is an action in equity. *Tupper v. Dorchester County*, 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). Accordingly, this court may review the circuit court's findings *de novo*. *Hardy v. Aiken*, 369 S.C. 160, 164–65, 631 S.E.2d 539, 541 (2006).

## LAW/ANALYSIS

### I. Restatement (Third) of Property: Servitudes § 4.8

Appellants contend the circuit court erred in refusing to apply the Restatement (Third) of Property: Servitudes § 4.8 (2000 & Supp.2006) (the Restatement) to allow them to unilaterally relocate the easement. We disagree.

■ Traditionally, the location of an easement, once selected or fixed, cannot be changed by the owner of the servient estate without the express or implied consent of the owner of the dominant estate. *Goodwin v. Johnson*, 357 S.C. 49, 53, 591 S.E.2d 34, 36 (Ct.App.2003). The Restatement, however, provides, in pertinent part:

> Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows .... (3)[u]nless expressly denied by the terms of an easement ... the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or develop-

ment of the servient estate, but only if the changes do not (a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created.

In *Goodwin*, this court adopted the Restatement with respect to easements created by necessity. *Goodwin* at 57–58, 591 S.E.2d at 38. However, the *Goodwin* court recognized "it *should be* more difficult to relocate an express easement, as it is akin to a contract and is bargained for by the parties." *Id.* at 55, 591 S.E.2d at 37 (emphasis in original). Moreover, we find no indication by our appellate courts that South Carolina would adopt the Restatement with respect to easements acquired by express grant.

■ Even if the Restatement could afford relief in a case involving an easement created by grant, we hold Appellants' case is not one in which the rule should be applied. Specifically, James H. Southard, Jr., the owner of Developments Unlimited, testified that, prior to September 2001, he used the easement to access the dominant estate with his tractor-trailer. After September 2001, he would not attempt to traverse the relocated easement with his heavy equipment. In addition, he complained he was forced to make four turns instead of two, and the turns came closer together, which prevented larger vehicles from making the turns.

Nevertheless, Appellants contend that because the Sheppards purchased the dominant estate after the relocation had occurred they cannot claim any right to the original easement. However, we see no reason why the Sheppards should be unable to claim the full extent of the easement rights conveyed to them, which were the same rights given to Fox and Developments Unlimited. Although the purchase agreement between Developments Unlimited and the Sheppards indicates the property is being sold "AS IS," the agreement also acknowledges the existence of the ongoing litigation concerning the easement giving the Sheppards an expectation that the easement could be returned to its original location. Moreover, Appellants agree the easement is appurtenant to the dominant estate and not a mere personal privilege. *See e.g., Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191

(1997) (distinguishing between an easement appurtenant and one in gross). Consequently, the proper analysis is to examine whether the relocation increased the burden on the dominant estate, not just the current owners.

We find, as did the trial court, that Appellants' actions increased the burden on the dominant estate. Therefore, there was no error in refusing to apply the Restatement rule.

## II. Implied Consent

■ Appellants also argue Southard impliedly consented to the relocation of the easement. We disagree.

■ "Any action which would tend to deceive or mislead may constitute sufficient grounds for a court to find acquiescence or an implied consent to [a] relocated easement." *Henning v. Neisz*, 148 Ind.App. 576, 268 N.E.2d 310, 316 (1971). Here, Appellants presented testimony that Southard asked them to relocate the easement. C.C. Harness, III, an attorney representing Appellants, attempted to negotiate a relocation with the attorney for Southard, but Harness testified no agreement was reached. Russ Pye explained he relocated the easement at the request of Southard, but acknowledged the path of the new road was chosen more by forces of nature (lightning eliminating trees) than by any human choice. Southard specifically testified he did not consent to the relocation of the easement. We find a preponderance of the evidence supports the circuit court's decision that Southard did not, impliedly or otherwise, consent to the easement's relocation.

## CONCLUSION

We hold the circuit court properly refused to apply the Restatement to provide relief to Appellants. More particularly, we find the relocation increases the burden on the dominant estate. In addition, a preponderance of the evidence supports the circuit court's ruling that Southard did not impliedly consent to the relocation. Therefore, the circuit court's decision is

**AFFIRMED.**

GOOLSBY, J., and CURETON, A.J., concur.