SARAH E. JOHNSON *v.* ODESSA B. ROBINSON

[No. 909, September Term, 1974.]

*Decided June 4, 1975.*

The cause was argued before MOORE, LOWE and MASON, JJ.

*Thomas F. Mudd* for appellant.

*Ernest C. Dickson* for appellee.

LOWE, J., delivered the opinion of the Court.

In *Slear v. Jankiewicz,* 189 Md. 18, 24, Judge Markell quoted without need for attribution "You take my house when you do take the prop that doth sustain my house." The original author continued "You take my life when you do take the means whereby I live." Appellant may well have added "You take my land when you deny me the way to its enjoyment."

On May 20, 1953 Sarah Johnson contracted to sell to Odessa B. Robinson "20 acres" of land for two thousand dollars, nineteen hundred of which was to be paid "at a rate of $35.00 per month until paid in full." Although Mrs. Robinson was limited by her counsel to testifying to ownership, her son Otay Smith, having "handle[d] all the transactions in connection with this property" testified at

length. Actually, by an affirmative response to his mother's counsel, it was indicated that it was he who had "entered into [the] contract to buy this 20 acre tract and a fraction acre of land through [his] mother." We shall thus refer to Mr. Smith as the purchaser.

The final payment for the property was at least a decade later, and while the parties were not certain actually when,[1] the chancellor found it to be in 1964. The extended period of payment, as well as the looseness of the arrangement was explained by Mr. Smith indirectly when he testified to his relationship with Mrs. Johnson whom he "trusted like a mother," and more directly when he said:

> " . . . I actually borrowed more money, that is why it took more than ten years to pay for. See, I made two personal loans from her. I borrowed $300.00 from her and I borrowed $600.00 from her and this was all paid for in ten years. . . ."

The conveyance finally came by way of an undated deed, notarized on March 6, 1972 and recorded the following day. The eight year delay following final payment was at least partially attributable to Mrs. Johnson who declined to execute a deed until she established the boundary lines of other land she chose to retain which land was ultimately determined to be situate behind that which she had sold appellee. Mrs. Johnson was concerned that the retained land which had not been accurately located would be denied access to a public road by the conveyance to appellee.

> "I wanted an outlet. I was fastened in. I didn't know where my land was at first, see. And I had to pay the taxes every year for twenty-five acres of land and four acres. I didn't know where it was at."

In 1967 or 1968 Mr. Smith pressed for his deed. It was then that he first heard that the reason Mrs. Johnson was

---

1. Mrs. Johnson admittedly didn't recall:

   "I don't know. I disremember. It has been so long I disremember when he finished paying."

hesitating to provide the deed was because she wanted some means of ingress to and egress from her land-locked property. Mr. Smith then:

" . . . asked her where was the land. She said she was going to have it surveyed and let me know. I said on my plat it doesn't show you own any land anywhere back there."

Mr. Smith testified further on cross-examination that he did recall telling Mrs. Johnson prior to the deed's execution that he was "going to let her out."

"I said we would try to work out something if she would tell me where the land was but she couldn't tell me where the land was. She said in the back. I think that is all I can get out of her here. I said when are you going to have it surveyed but she never had it surveyed and showed me nothing. The only time I found it is when I went down to the court house and checked it out. That was in 1971 or 1972."

The lost land apparently had as its origin a deed dated 1873, describing a 70 acre tract which was owned by two persons as tenants in common. The tract was physically divided, ultimately descending, one-half to Mrs. Johnson, the adjoining one-half to Nathaniel Fleet, et ux. by mesne conveyance. The division line in the rear of Mrs. Johnson's half was never clearly established; however, from time to time she sold off several small parcels of her land near the public road on which it bordered and where her ownership was unquestioned. The final sale of 20 acres was the last to which she could safely provide title until the boundary between her and Mr. Fleet was established. The remaining few acres were reserved and might serve as a cushion for error until the division line was established.

That line was finally established by agreement consummated by a derivative deed confirming the agreed boundary dated February 8, 1968 between appellant and the Fleets. The deed recited the common ownership in 1873, its

division, the lack of record of such division and the purpose and desire to confirm that division of record. A surveyed boundary line was agreed to in this confirmatory deed.

The approximately 20 acres included in the conveyance to appellee together with appellant's "lost land" is shaped like an awkward funnel with the narrow spout meeting the road for only 70 feet. The remainder of appellee's 20 acres lay between the road and Mrs. Johnson's retained land which lay at the top of the funnel between Mr. Fleet and appellee.[2]

Appellee's own limited road front may account for his reluctance to share access to the road with Mrs. Johnson, however, while on the stand, Mr. Smith denied that he had "no intention of letting her [Mrs. Johnson] through [the] property." Indeed he said he would "let her out":

> "If there is any way humanly possible that it wouldn't affect my place, or what I want to do to the property."

Regrettably, to that intended purpose we are not made privy that we might have more clearly understood his reply. We know, however, why Mrs. Johnson finally signed the deed without the desired reservation:

> "Why did you ultimately sign the deed and deliver the deed without resolving the access problem?
>
> A. Well, he cut up and act so nasty about it and told me that he had paid $50.00 for the deed and he just went on and unnerved me and I forgot when I went to Mr. Lancaster to say that I didn't have no outlet.
>
> Who is Mr. Lancaster?
>
> A. He is a lawyer.";

2. Appellee's argument below that a way of necessity should exist over Mr. Fleet because he was last in the chain of title is without merit since he conveyed her nothing, merely confirming what she already owned. The loss of access to a public road came as a result of Mrs. Johnson's deed to Mrs. Robinson, not the confirmatory action of Mr. Fleet.

although Mr. Smith did not recall that version of her oversight:

> "Q. Did she at that time make any statement to her attorney that she had any land that she wanted a right of way on your property?
>
> A. Yes, she did. She told Mr. Lancaster, said Mr. Lancaster, I am messed up here, somehow or another I locked myself in. Said I sold this gentleman here some land, he has paid for it, he has the tax receipt and all, the receipts he has paid for it and I locked myself in and he thinks I should give him a deed. I said I wasn't going to give him a deed until I talked to you.
>
> So he advised her, said this man has paid for it, some ten years prior to now, he said he has paid for it, the only thing you can do is go ahead and give this man his deed. He said you sign it and I will notarize it, which he did in his office.
>
> That was in '72, ten years after I had paid for it."

Finding no express reservation of a right-of-way as alternatively prayed by the appellant in her suit in the Circuit Court for Charles County, the chancellor narrowed the issue to whether or not appellant could claim a way of necessity which was her other prayer. The chancellor found as a fact "that Mrs. Johnson owned a tract of land of which the conveyance to Mrs. Robinson was a part." As a consequence "If she does have an easement of necessity it must be by implied reservation as she is seeking a right of way across property which she conveyed for the benefit of property which she retained."

He then concluded by quoting from *Burns v. Gallagher*, 62 Md. 462, 471

> " ' . . . that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be *actually necessary*

to the enjoyment of the estate or parcel retained by the grantor.' "

The chancellor then added:

"Facts in this case clearly show the necessity for the right of way, however, there is not showing that the right of way was in use at the time of the sale of the property or at the time of the settlement.

For these reasons the relief prayed by the Plaintiff is denied. . . ."

A right-of-way of necessity is supposed by some to exist merely by reason of the fact that without it one has no access to his land. *Brice v. Randall*, 7 G. & J. 349. Such does not appear to be the case. In order to establish such a way, it must be shown that sometime in the past the land for the benefit of which the way is claimed, and that in which it is claimed, belonged to the same person.

Such an easement usually arises (and originally arose exclusively) when one conveys land to another which is accessible from a public road only through retained land of the grantor or through land of a stranger. *Fox v. Paul*, 158 Md. 379, 386. This right does not arise from any express grant but from a presumption that it was the intention of the parties that the grantee should have access to his land over the lands of the grantor. *McTavish v. Carroll*, 7 Md. 352. It has come to be referred to as an implied grant. *Duvall v. Ridout*, 124 Md. 193.

A second method by which a way of necessity may be given effect is by implied reservation. It wasn't until 1879 that the Court of Appeals had reason to decide whether or not a way of necessity might thus arise in Maryland. In an analytical opinion delivered in *Mitchell v. Seipel*, 53 Md. 251, the Court decided that a grantor who had denied himself access to reserved land by not expressly reserving an easement through land he had conveyed may in cases of strictest necessity be permitted a way of necessity.

"Finding then no binding decision of this Court, and no decided preponderance of authority in this

country, to prevent us from following the law as it has recently been settled by the decisions in England, and being satisfied the distinction so clearly drawn in those decisions between what has been called an implied grant, and what has been attempted to be established under the name of an implied reservation, is not only founded in reason, but has existed almost as far back as the law upon the subject can be traced, we shall apply it to the case before us.

It remains then to ascertain whether this alley is a way of necessity, so as to fall within the exception to the second proposition stated in *Wheeldon vs. Burrows*. [Law Rep., 12 Ch. Div. 31]." *Mitchell*, 53 Md. at 273.

The "second proposition" of *Wheeldon* had been previously discussed in *Mitchell*, 53 Md. at 269:

"In an able and extended opinion delivered by THESIGER, L. J., all the leading English decisions are reviewed, and as the result of this review two propositions are stated: *First*, that all these continuous or apparent easements, or in other words all these easements which are necessary to the reasonable enjoyment of the premises granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted *will pass to the grantee under the grant. Second*, that if the grantor intends to reserve any right over the tenement granted it is his duty to *reserve it expressly* in the grant, and to this the only exception is of *ways or easements of necessity*. Both these general rules are founded upon the maxim that 'a grantor shall not *derogate* from his grant.' "

Five years later the "leading case" of *Burns v. Gallagher, supra*, 62 Md. 462, firmly established the implied reservation as part of our law. The sentence quoted by the chancellor

was rather a part of a general statement of law than an expression of a defined prerequisite in the rule under discussion:

> "For the principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be *actually necessary* to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property. In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. If the grantor intends to reserve any right or easement over the property granted, it should be done by express terms, and not afterwards require a plain grant, it may be for full consideration, to be limited and cut down by any mere implied reservation of privileges over the property granted. It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of *implied reservation* can be invoked." *Id.* at 471-472.

The Court of Appeals emphasized, that a reservation would be implied only in extraordinary circumstances, *i.e.,* where there was clear evidence that despite the absence of

an express designation in the deed, the parties intended that a right-of-way would be reserved. The rule was described by the Court in terms of the usual situation where both parties were aware prior to the deed's signing that the right-of-way was the grantor's sole means of access to his property, as well as that it was and must continue to be used by him. The parties' knowledge assured their awareness of "the real purport of their deeds" and created a "presumption of a reservation." We may conclude that the key criteria for the presumption are knowledge of the necessity and some sort of objective manifestation of the parties' intention to reserve a right-of-way. It would thus appear that the *Burns* Court was not intending to espouse anything more than that the easement must be "apparent" for an implied reservation, serving as some notice or warning to the purchasing party that an easement may exist.

In the reverse but analogous situation an implied grant will exist where the *necessity* of an easement for the benefit of a grantee is *apparent* to the grantor:

> "And that being so, by analogy to the well settled principle that all *apparent* easements or quasi-easements which are necessary to the reasonable enjoyment of the premises granted, and which have been and are at the time of the grant, used, or allowed to be used, by the owner of the entirety for the benefit of the part granted, will pass to the grantee by implication." *Burns*, 62 Md. at 474. [Emphasis added in part and deleted from original].

The same principle is applied in the quasi-easement situation. A "quasi-easement" is a legal fiction developed to overcome the premise in law that one cannot have an easement over one's own land. When one utilizes a part of his land for benefit of another part and the land is separated without reservation or grant, a quasi-easement is implied. The phrase is no more than a convenient expression for an owner's utilization of one part of the land for the benefit of the other. *Tiffany Real Property*, (3d ed.), § 781.

When the owner transfers the quasi-dominant portion of his land, it is said that the quasi-easement implied by law goes with it to the grantee on the presumption that the grantor and grantee *intended* and *expected* that it should pass. The Courts merely declare that such an intention may be presumed from the *apparent* dependence of one piece of land upon the other.[3] *Knight v. Mitchell,* 154 Md. 102, 105-106.

Although many of the older cases include in their quotes from *Burns, supra,* the language "in use at the time of the grant," no case to our knowledge has turned on that issue. Even those mentioning either the phrase or cases utilizing the phrase acknowledge the requirement is that the easement be "apparent and continuous." In *Dalton v. Real Estate and Imp'vt. Co.,* 201 Md. 34, 46, Chief Judge Hammond made no reference to a required "use" of the quasi-easement but set forth the generally accepted tests of "continuous, apparent and necessary." Significantly, though,

---

3. *Tiffany* on *Real Property,* (3d ed.), § 781 says:

"It is perhaps unfortunate that the courts, in determining whether, in a particular case, an easement corresponding to a pre-existing quasi easement has passed with the land, have usually failed to recognize that the question is primarily one of construction, and have instead undertaken to lay down absolute rules as to what characteristics the particular easement or quasi easement must have, implying that, if it has these characteristics, the easement will pass as a matter of law. *The characteristics ordinarily referred to* in this connection *are,* as above indicated, *that the user be apparent,* that it be *continuous, and* that it be *necessary,* each of which will be hereafter discussed in turn. *But it does not seem that the presence or absence of any or all of these characteristics should be conclusive.* Taking the case of a quasi easement which is not continuous and which is not necessary, nevertheless a conveyance in terms of the quasi dominant tenement should, it is conceived, be construed as a conveyance of the lands with an easement appurtenant thereto corresponding to the pre-existing quasi easement, if this accords with the probable intention of the parties. On the other hand, even though the quasi easement has all the three characteristics named, an easement corresponding thereto evidently does not pass with the land if the language of the conveyance shows clearly an intention otherwise, or if the circumstances are such as to exclude a construction of the language of the conveyance as inclusive of the easement. So it has been decided that an easement does not pass when the grantee of the land knows that the grantor has no intention that it shall pass." [Emphasis added].

he cited *Burns* as authority therefor, indicating not only his awareness of the *Burns* statement quoted by the chancellor below, but also his recognition of the "continuous and apparent" test as *the* test applicable to implied reservations and grants:

> "Nevertheless, when the owner of property has used one part for the benefit of another in such manner that there would arise a presumption that an easement existed if the two parts had been held by different owners, then, upon conveyance of the part so used, there is a *quasi*-easement which will be granted by implication as an easement to the purchaser of the other or dominant part, provided the use has been such that the easement would be classed as continuous and apparent, and necessary to the reasonable enjoyment of the property conveyed. *Eliason v. Grove*, 85 Md. 215, 36 A. 844, *Burns v. Gallagher*, 62 Md. 462. Continuous and apparent easements in the early law did not include ways. However, the doctrine of *quasi*-easements has been extended to include established ways where they are reasonably necessary to the enjoyment of the property conveyed, and this Court has so held."

Chief Judge Hammond did indeed recognize a distinction between implied grants and implied reservations; however, it was in the degree of necessity rather than in use:

> "A distinction has been maintained in the law between implied grants and implied reservations. If an easement is continuous and apparent and necessary to the reasonable enjoyment of the premises granted, it will be implied that the grant included the easement. However, if a grantor intends to reserve any rights or uses in or over the tenement granted, he must reserve them expressly, and the only exception is of easements, including ways, of actual, strict necessity."

We conclude that the *Burns* Court's example of an easement "in use at the time of the grant" was but one way a "necessary and continuous" easement could be made "apparent" to a purchaser. *Dalton, supra,* 201 Md. 34. A precise definition of these terms appears in Tiffany, *Real Property* (3d ed.), § 784. Those definitions were relied on in *Slear, supra,* 189 Md. 18; *McConihe v. Edmonston,* 157 Md. 1, 11 and most extensively in *Kelly v. Nagle,* 150 Md. 125, 132, from which we quote:

> "It is also well settled that such *quasi* easements as pass by implication and ripen into easements for the benefit of the grantee of the dominant estate, must have been, and must be at the time of the conveyance, apparent and continuous. In *Tiffany on Real Property,* vol. 1, page 706, it is stated: 'That an easement to be thus created by implied grant must be apparent, is conceded by all decisions; and it is apparent, it is said, for this purpose, *if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject.*'
>
> *In other words,* to be apparent, as used in this connection requires the *quasi* easement or use enjoyed by the dominant tenement and imposed as a burden upon the servient tenement, must be visible, or *such as would come to the knowledge of a prospective purchaser of either the dominant or servient estate by such an examination of the premises as is ordinarily made by one desiring to purchase.* In *Eliason v. Groves, supra,* this Court said: 'Whilst courts should not be too ready to sustain grants by implication, yet if at the time of the purchase of the property there are visible and apparent easements and privileges annexed to it which are necessary for its reasonable enjoyment, we must assume that they were taken into consideration when the price was agreed upon and

that the use of them was paid for. . . .' [Emphasis added].

In addition to being apparent, the *quasi* easement must be continuous. In determining what constitutes a continuous easement or *quasi* easement, there is a difference of opinion as expressed in the decisions of the courts. In some of these cases the courts hold that an easement is continuous if no act of man is necessary to its continued exercise; cases holding this view being reported in Mississippi, Rhode Island and Michigan. The view adopted by other courts is, that if there is a permanent adaptation of the two tenements to the exercise of the easement, it is continuous. This view is supported by decisions in the states of New Jersey, Indiana and New York, and is in harmony with the decision of this Court in the case of *Eliason v. Groves, supra.* These principles being firmly established, not only by the weight of authority elsewhere, but by our own decisions, the question is of their applicability to the facts of the case now being considered."

The definitions of continuous are both broad enough to encompass Mrs. Johnson's way of necessity, so that that phase of the test would give us no pause even had the issue been raised.

The definition of "apparent" reinforces our conclusion that adequate notice of the existence of an easement is essential to a finding of implied reservation. In *Slear, supra,* 189 Md. 18, the Court repeated the Tiffany definition of an "apparent" easement as it did in *McConihe* and *Kelly*:

*"if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject."* [Emphasis added].

Such notice, *McConihe* indicates, "as would come to the knowledge of a prospective purchaser of either the dominant

or servient estate . . . " serves the underlying purpose of the rule. How can Mrs. Johnson be denied a way necessary to enjoyment of her property through the land of a purchaser who admittedly had notice of the problem before the deed was signed at the instance of that purchaser?

We acknowledge that the appellee did not originally contract to share an entrance with appellant, although that necessity became apparent before the deed was signed. When, prior to settlement, the appellee realized the land would be encumbered by a way of necessity, he could have declined to proceed and demanded return of the purchase price, just as would have been his right had there been an express easement encumbering the land. He admitted that he would "try to work out something" but ultimately chose instead to demand a deed. We equate his admission of knowledge of Mrs. Johnson's dilemma with the notice a purchaser would receive from a physically "apparent" easement. The purchaser's actual knowledge abundantly supplants notice generated by physical use of the easement which appellee may have "seen or known on a careful inspection."

Upon remand the chancellor is directed to decree a way of necessity, the reasonable location of which he shall establish as to inconvenience appellee only so much as is necessary to provide appellant ingress and egress to her land.

> *Judgment reversed.*
> *Case remanded for further pro-*
> *ceedings pursuant to this opin-*
> *opinion.*
> *Costs to be paid by appellee.*