ABRAHAM A. SHPAK ᴇᴛ ᴀʟ. *v.* SAMUEL
OLETSKY ᴇᴛ ᴀʟ.

[No. 161, September Term, 1976.]

*Decided June 2, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*John H. Zink, III* and *Clinton P. Pitts* for appellants.

*Eugene Hettleman* for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the date for determining whether a way of necessity was created by an implied reservation was that of the contract between the original parties and not that of the ultimate deed which came after a period of litigation. Accordingly, we shall hold that appellees-cross-appellants, Samuel Oletsky et al., do not have a way of necessity across lands of appellants-cross-appellees, Abraham A. Shpak et al. (Shpak).

## 1. The Facts

The facts will be better understood by reference to the plat appended to this opinion which the reporter is directed to reproduce. Wm. H. Smith Company, Inc. (Smith), acquired 83.89 acres of land on Deer Park Road, a public highway in Baltimore County. Smith apparently had plans for a subdivision since a plat for such purpose was prepared. On July 26, 1958, Smith and Carl Kirby and wife (the Kirbys) entered into a contract by which the Kirbys purchased approximately 10 acres of land for $35,000, designated as Lot A on the appended plat. The contract contained what were styled "Additional Points of Agreement." The fourth such point provided that until the roads "outlined on 'the plan' ha[d] been installed, the [Kirbys were to] have the right to use the [then] present lane from the acreage covered by th[at] agreement to Deer Park Road." The next succeeding paragraph said:

> "5. In the event Ivy Mill Road and that part of
> Gray Dawn Road which reaches the acreage

sold have not been completed within 3 years from date hereof, the seller will convey to the buyer the 80' strip to Deer Park Road (Ivy Mill Road on 'the plan') together with lot No. 4 as shown on 'the plan' in fee simple with no restrictions whatsoever."

The contract was recorded among the land records of Baltimore County on March 20, 1959, subsequent to the deed from Smith to the Kirbys which was executed on September 8, 1958, and recorded two days later.

A preliminary subdivision plan of a development to be known as "Alvermar" was prepared by Smith. The last revision date appearing on the plat filed in these proceedings is October 29, 1959. It shows the land conveyed to the Kirbys as Lot A, located off of Deer Park Road, the only then existing public road, surrounded by a number of paper lots and several paper roads. It has some frontage on two paper roads, one known as "Grey Dawn Road" [1] and one known as "High Knoll Road."

On February 14, 1961, Smith conveyed Lot 3 to Henry D. Scriba and Margaret P. Scriba. On June 13, 1961, Smith conveyed to Grey Dawn Development Co., Inc. (Grey Dawn), the entire tract except for the previously conveyed Lot A and Lots 1 and 3. Thus, Grey Dawn acquired from Smith land with an outlet on Deer Park Road since its deed included Lot 2. On the same day Grey Dawn executed a mortgage to Prudential Savings and Loan Association, Inc. (Prudential), covering the land it had just bought except for Lot 2. As the trial judge put it, "David Preller was named in the mortgage as the duly authorized attorney or agent of Prudential. The testimony . . . discloses that David Preller had examined the title to this property for Prudential, and presumably for Grey Dawn, either personally or through an agent. The testimony also discloses that at the time of the examination of such title, Mr. Preller was aware of the contract between Smith and Kirby concerning Lot No. 4." Thus it follows that

---

1. In the contract reference was made to "Gray Dawn Road." The plat has "Grey Dawn Road" delineated upon it.

Prudential was aware of the fact that if the roads required by paragraph 5 of the contract between the Kirbys and Smith were not completed in a little over a month after the date of the mortgage to it, there was the distinct possibility that **Grey Dawn's only access to the mortgaged land would be through Lot 2, not included in the mortgage to Prudential.**

On July 6, 1961, 20 days short of the expiration of the three-year period specified in paragraph 5 of the contract between Smith and the Kirbys for construction of the roads, Grey Dawn conveyed Lot 2 to Johnnie and Carolyn Martinez.

On October 11, 1961, counsel for the Kirbys filed a bill for specific performance against Smith, Grey Dawn, and Prudential, seeking enforcement of the contract of July 26, 1958, relative to Lot 4 and the 80 foot strip claiming that the roads mentioned in paragraph 5 of the additional points of agreement had not been constructed. (We shall hereafter refer to Lot 4 and the 80 foot strip as Lot 4.) A decree was passed by the Circuit Court for Baltimore County on April 25, 1962, directing conveyance in accordance with the terms of the contract.

On August 15, 1962, Grey Dawn conveyed Lot No. 1 to Frances Atkins and Mary Radecke. The trial judge observed, "It is to be noted that this deed should have been executed by Smith, as it was excepted from the deed from Smith to Grey Dawn . . . ." The deed itself does not appear in this record. Although instances have been known of persons purporting to convey land in which they had no interest, we note that here the same individual was president of both Smith and Grey Dawn, thus giving rise to a suspicion that title may well have passed to Grey Dawn. Therefore, we observe that if Grey Dawn did own this land at the time of this conveyance, then almost four months after it became obligated under the court decree to make the conveyance of Lot 4 to the Kirbys it stripped itself of an outlet to the highway. In the view we take of this proceeding, however, whether title to Lot 1 had passed to Grey Dawn is irrevelant.

On September 20, 1963, Grey Dawn finally complied with

the specific performance decree and conveyed Lot 4 to the Kirbys. It will be perceived that as a result of that mandated conveyance Grey Dawn no longer had any frontage on Deer Park Road, the only public highway abutting on the original tract. Prudential did not join in the conveyance, despite the command of the decree. Instead, almost two years after the passage of the decree, it executed a partial release of mortgage on March 2, 1964, so that the Kirbys then held the land acquired by the September 1963 conveyance free and clear of the Prudential lien. Introduced into evidence below was a letter to Prudential from its attorney, dated a few days prior to the specific performance decree, in which he advised of a possible settlement without which the "tract w[ould] be land-locked." No such settlement was accomplished.

The mortgage to Prudential was foreclosed. Prudential purchased the land at the sale. A short time after receipt of the deed it conveyed this land to Samuel Oletsky, Irvin Selko, and Richard Falk.

On January 28, 1966, the Kirbys conveyed their original 10 acres and Lot 4 to Shpak.

Samuel Oletsky and Richard Falk, two of the three Prudential grantees, filed a bill for a declaratory judgment against Shpak in the Circuit Court for Baltimore County. They sought to have the Shpak property declared subject to a way of necessity. When it was suggested that all of the potential parties in interest were not parties to the case, an amended bill was filed naming Irvin Selko as a party defendant. As an apparent consequence of settlement of other litigation involving Oletsky, Falk, Selko, and others, the interest of Selko has been conveyed to Samuel Kalis, now a party to this proceeding. (We shall henceforth refer to Oletsky, Falk, and Kalis as Oletsky et al.)

A second amended bill was filed naming the then owners of Lots 1, 2, and 3 as additional parties defendant. The trial court granted a motion for summary judgment in favor of those owners. No finding under Maryland Rule 605 a was made that there was "no just reason for delay" and there was no "express direction for the entry of judgment." Thus,

it was not until the time of this appeal that there could have been a challenge to the correctness of that finding. It is not attacked on appeal.

At the ultimate trial the chancellor concluded that for there to be a way of necessity by implied reservation the way must be "apparent." He held, citing *Johnson v. Robinson*, 26 Md. App. 568, 338 A. 2d 88, *cert. denied*, 276 Md. 748 (1975), that "[t]he critical time for determining the *existence of the way of necessity or quasi* easement is the date of the deed." (Emphasis in original.) In due season he signed a decree establishing a way of necessity 10 feet in width.

Both sides have appealed. We granted the writ of certiorari prior to consideration by the Court of Special Appeals. Shpak claims, among other points, that there should be no way of necessity. Oletsky et al. contend that the width should be greater than 10 feet. In the light of our conclusion here it will be unnecessary to consider the cross-appeal.

## 2. The Law

Judge Charles C. Marbury observed for the Court in *Hancock v. Henderson*, 236 Md. 98, 102, 202 A. 2d 599 (1964), "Ways by necessity are a special class of implied grants and have been recognized in this State for a good many years." There are two types of ways of necessity, implied reservation and implied grant. *Dalton v. Real Estate & Imp'v't Co.*, 201 Md. 34, 47, 92 A. 2d 585 (1952); *Slear v. Jankiewicz*, 189 Md. 18, 22, 54 A. 2d 137 (1947), *cert. denied*, 333 U. S. 827 (1948); *Jay v. Michael*, 92 Md. 198, 209, 48 A. 61 (1900); *Eliason v. Grove*, 85 Md. 215, 225, 36 A. 844 (1897); *Mitchell v. Seipel*, 53 Md. 251, 265, 36 Am. Rep. 404 (1880); 3 H. Tiffany, *The Law of Real Property* § 779 (3d ed. 1939); 3 R. Powell, *Real Property* ¶ 410, at 428-30 (1977), and L. Jones, *Easements* § 306 (1898). If a reservation is not expressly made "in the deed, it must be shown that there is a necessity for its use by the property retained over the property conveyed." *Hansel v. Collins*, 180 Md. 209, 216, 23 A. 2d 686 (1942). To similar effect relative to necessity,

sometimes referred to as necessary to be "imperative and absolute," *see Condry v. Laurie,* 184 Md. 317, 322, 41 A. 2d 66 (1945); *Tong v. Feldman,* 152 Md. 398, 402, 136 A. 822 (1927); *Jay v. Michael, supra,* 92 Md. at 210; *Burns v. Gallagher,* 62 Md. 462, 472 (1884); and 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 353 (J. Grimes ed., 1961). "[A] right of way of necessity can only be raised out of the land granted or reserved by the grantor, and never out of the land of a stranger." *Oliver v. Hook,* 47 Md. 301, 310; Powell, op. cit. ¶ 410, at 436-37; Thompson, op. cit. § 362, at 412 and § 364, at 436, and Jones, op. cit. § 314. An easement by implied reservation must arise at a time when there is unity of title. *Hansel v. Collins, supra,* 180 Md. at 216; Powell, op. cit. ¶ 410, at 432; Thompson, op. cit. § 364, at 434, 446; Jones, op. cit. § 314, at 258, and E. Washburn, *Easements and Servitudes* 218 (2d 3d. 1867).

"[G]rants of easements by implication are looked upon with jealousy and are construed with strictness by the courts." *Condry v. Laurie, supra,* 184 Md. at 321. "The rule with respect to implied reservations is much more strict than that with respect to implied grants." *Slear v. Jankiewicz, supra,* 189 Md. at 22, quoting *Hansel v. Collins, supra,* 180 Md. at 215.

In *Greenwalt v. McCardell,* 178 Md. 132, 139, 12 A. 2d 522 (1940), our predecessors said, "Necessity of itself does not create a right of way; it is merely a fact offered in evidence to show an intention to establish a right of way by raising the presumption of a grant." Although the Court was there concerned with an express grant, it would seem to follow that the same rule would be applicable to the creation of a way of necessity by reservation. Jones, op. cit. § 304, puts it slightly differently, stating:

> " 'It is not the necessity which creates the right of way, but the fair construction of the acts of the parties.' The necessity merely furnishes evidence as to the real intention of the parties. 'For the law will not presume that it was the intention of the parties that one should convey land

to the other in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law under such circumstances will give effect to the grant according to the presumed intent of the parties.' " *Id.* at 250. (Footnotes omitted.)

In *Burns v. Gallagher, supra,* 62 Md. 462, Chief Judge Alvey said for our predecessors:

"[T]he principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property. In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds." *Id.* at 471-72.

This was quoted in *Slear v. Jankiewicz, supra,* 189 Md. at 23. In *Mitchell v. Seipel, supra,* 53 Md. at 274-75, our predecessors observed, "Whether it is a way of necessity or not, must depend upon the state of things existing at the date of the deed . . . , and not with reference to the changes subsequently made by the plaintiff on his own premises." Jones, op. cit. § 325 endorses the first portion of this

statement. Statements similar to the latter portion are found in *Hancock v. Henderson, supra,* 236 Md. at 104; *Feldstein v. Segall,* 198 Md. 285, 294, 81 A. 2d 610 (1951); and Powell, op. cit. ¶ 410, at 441 citing, among other cases, *Mitchell.* Although it is not an issue in this case, it should be observed that a way of necessity exists only so long as the necessity itself remains. *Hancock v. Henderson, supra,* 236 Md. at 105; *Condry v. Laurie, supra,* 184 Md. at 321; *Oliver v. Hook, supra,* 47 Md. at 309; Washburn, op. cit. 220; and Thompson, op. cit. § 362, at 416.

"[T]he court will not recognize a way of necessity if another road to the public highway can be made without unreasonable expense, even though the other road may be much less convenient. Mere inconvenience will not be sufficient to justify the finding of a way of necessity." *Condry v. Laurie, supra,* 184 Md. at 322. To like effect see *Mullins v. Ray,* 232 Md. 596, 599, 194 A. 2d 806 (1963), and Thompson, op. cit. § 364, at 440. Judge Markell observed for the Court in *Slear v. Jankiewicz, supra,* 189 Md. at 24, that "the rules regarding implied grants and implied reservations are both rules of construction."

Tiffany, op. cit., in discussing ways by necessity, states in § 781:

> "It has been stated that 'the moment a severance occurs by the sale of a part, the right of the owner to re-distribute the properties of the respective portions ceases and easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers, only, but is entirely reciprocal. Hence, if instead of a benefit conferred a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with a servitude upon it. *The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly*

*existing, to change materially the relative value of the respective parts.*

"It is perhaps unfortunate that the courts, in determining whether, in a particular case, an easement corresponding to a pre-existing quasi easement has passed with the land, have usually failed to recognize that the question is primarily one of construction, and have instead undertaken to lay down absolute rules as to what characteristics the particular easement or quasi easement must have, implying that, if it has these characteristics, the easement will pass as a matter of law. The characteristics ordinarily referred to in this connection are, as above indicated, that the user be apparent, that it be continuous, and that it be necessary, each of which will be hereafter discussed in turn. But it does not seem that the presence or absence of any or all of these characteristics should be conclusive. Taking the case of a quasi easement which is not apparent, which is not continuous and which is not necessary, nevertheless a conveyance in terms of the quasi dominant tenement should, it is conceived, be construed as a conveyance of the lands with an easement appurtenant thereto corresponding to the pre-existing quasi easement, if this accords with the probable intention of the parties. On the other hand, even though the quasi easement has all the three characteristics named, an easement corresponding thereto evidently does not pass with the land if the language of the conveyance shows clearly an intention otherwise, or if the circumstances are such as to exclude a construction of the language of the conveyance as inclusive of the easement. So it has been decided that an easement does not pass when the grantee of the land knows that the grantor has no intention that it shall pass." *Id.* at 256-57. (Emphasis added. Footnotes omitted.)

Jones, op. cit. § 321, at 263, observes that the law does not

prohibit one from cutting himself off from all access to his land. This and other matters were discussed by Professor J. Simonton, *Ways by Necessity*, 33 W. Va. L. Q. 64 (1923):

> "Is the so-called presumption of intent conclusive, or may it be overcome by showing the real intent of the parties? To put it in terms of public policy, are the interests in favor of allowing the easement strong enough to overcome the contrary expressed intent of the parties? Some presumptions in our law are so strong that they have become conclusive, as, for example, the presumption of a lost grant from adverse user for the requisite period. *But it seems the presumption as to an easement by necessity may be overcome by showing the actual contrary intent of the parties. Seemingly the law allows a landowner to cut off all his rights of access to his land, if he so desires.* He may do this by releasing all rights to others. And no easement by necessity arises in favor of a grantee, where, by the language in the deed, he represented himself as owning adjoining land over which there was access to a highway, though this recital was false. The same is held where the deed expressly creates a way which is too limited in scope for the full enjoyment of the land. It would seem from the authorities, that any language in the deed which fairly indicates the intent not to have an easement by necessity, will prevent its creation, though it is settled that the mere fact there are covenants of warranty in the deed will not have this effect. It is probable that the courts from the first would have denied an easement by necessity in any case where the intent of the parties was expressed to the contrary. The added contractual interest of the parties, or their expressed intent is sufficient to prevail against the social interest, added to the other interests, involved in the case." *Id.* at 78-79. (Emphasis added. Footnotes omitted.)

### 3. This Case

Several reasons are advanced by Shpak for a reversal. We need only deal, however, with whether Oletsky et al. are entitled to a way of necessity.

Oletsky et al. rely here, in part, upon *Condry v. Laurie, supra,* 184 Md. 317, saying that "[p]rior to [that] case . . . , the decision as to the creation of a way of necessity depended upon an attempt to discover the presumed intention of the parties," but in that case the Court "expanded the doctrine by doing away with the question of the intent of the parties, and allowed the easement to arise on the basis of necessity alone, where the intent of the parties appeared to *negative* the creation of the easement." (Emphasis theirs.) In *Condry* the grantees had been given a "license to use the private road from the County Road to and from the property [then] conveyed . . . while they sh[ould] remain owners of the property." The controversy was between parties holding under those grantors and grantees. Although it is true that a strong dissent was filed by Judge Henderson, concurred in by Judge Grason, contending that the license was indicative of an intent not to create a way by necessity, we are of the view that Oletsky et al. misconstrue the holding in *Condry.* The Court there said:

> "While the Hittles were given a license to use the designated road only as long as they remained owners of the parcel conveyed, the license did not imply that future owners might be barred from access to the county road. When the licensees were no longer owners of the property, succeeding owners were still entitled to a way of necessity, although the way might not necessarily be the same as that used by the licensees." *Id.* 184 Md. at 323.

*Slear v. Jankiewicz, supra,* 189 Md. 18, was decided a little less than two and a half years later by the same judges except that Judge Melvin was a part of the Court which decided *Condry,* but not *Slear,* and Judge Markell, the

author of *Slear,* did not participate in the decision in *Condry.*
The Court there said:

"It is a 'well settled principle that all apparent easements or *quasi* easements which are necessary to the reasonable enjoyment of the premises granted, and which have been, and are at the time of the grant, used, or allowed to be used, by the owner of the entirety for the benefit of the part granted, will pass to the grantee by implication.' *Burns v. Gallagher,* 62 Md. 462, 474.

"In the opinion last quoted Judge Alvey also stated the rule of construction regarding reservation of easements by implication: 'For the principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. * * * In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. * * * It is only in cases of the strictest necessity, *and where it would not be reasonable to suppose that the parties intended the contrary,* that the principle of implied reservation can be invoked.' 62 Md. 471, 472. (Italics supplied by the court in quoting the last sentence in *Jay v. Michael,* 92 Md. 198, 210, 48 A. 61, and in *Mancuso v. Riddlemoser Co.,* 117 Md. 53, 57, 82 A. 1051, Ann. Cas. 1914A, 84.) In short, the rules regarding

implied grants and implied reservations are both rules of construction." *Id.* 189 Md. 23-24.

In *Feldstein v. Segall, supra,* 198 Md. 285, Judge Markell explained *Condry* for the Court, saying:

"In *Condry v. Laurie,* 184 Md. 317, 41 A. 2d 66, the court and the dissenting judges differed as to how far necessity is the legal basis of a way of necessity and how far it is evidence of an implied intent to grant such a way. The court held that a personal license in the deed did not negative a way of necessity. The occasion for using the way of necessity was deferred until expiration of the personal license, but the necessity of the way to the granted estate existed at the time of the grant. See also Case note, 9 Md. L. Rev. 84." *Id.* at 294.

*Condry* was again discussed in *Hancock v. Henderson, supra,* 236 Md. 98. Judge Marbury there said for the Court, "The cases seem to be searching for the intent of the parties,[2] but some hold that where none is expressed it will be presumed the parties intended any lawful use of the property." In footnote 2 the Court observed:

"2. The concept that a way of necessity arises from the presumed intention of the parties has been criticized. See Simonton, *Ways By Necessity,* 33 W. Va. L.Q. 64. We are among the great number of jurisdictions which early followed that view, Fox v. Paul, 158 Md. 379, 386, and cases there cited. However, in Condry v. Laurie, 184 Md. 317, we recognized the difficulty encountered in adhering to such a view when, as in this case, the adversaries are both remote grantees of the parties to the original conveyance. In that case the judges disagreed as to how far necessity is the legal basis of a way of necessity and to what extent it is evidence of an implied intent to grant such a way. The majority were of the opinion that the basis for implying the grant was the necessity of ingress and

egress over the grantor's land, imposed by law regardless of a contrary expression of intent of the parties. For a discussion of the problem of imposing an intent on subsequent grantees, see casenote in 9 Md. L. Rev. 84." *Id.* at 104.

As we see it, Oletsky et al. seem to be of the view that because their title derives from Prudential this in some manner puts them in a better position because it "did not join in a deed to [the] predecessor of [Shpak], but . . . granted and released the specific property described by metes and bounds to its mortgagor only," adding that "[t]here is nothing within this instrument negativing any intent to retain the way of necessity which the law implies." It is elementary, however, that no mortgagee may obtain through a mortgage any better title than its mortgagor has. It is for that exact reason that conveyances arising out of mortgage foreclosures usually carry language similar to that used in the deed in this foreclosure where the assignee of the mortgage conveyed to Prudential "all the right, title and interest of the said parties to said mortgage or of those claiming by, from or under them, in and to" the land there described as having been included in the mortgage.

Given the ownership of the entire tract by Smith, the conveyance by Smith to the Kirbys with the provision in the contract as to Lot 4, the fact that Prudential took the mortgage with actual knowledge through its agent of the contract provision relative to Lot 4, and the decree enforcing the contract relative to Lot 4 which directed Smith, Grey Dawn, *and* Prudential to convey Lot 4 to the Kirbys, we are of the view that the entire tract must be considered in determining the presence of a way of necessity, not just that portion of the land acquired by Prudential as a purchaser at its own foreclosure sale.

Oletsky et al. and the trial judge have considered this matter as of the time of the deed of Lot 4 to the Kirbys, the predecessors in title of Shpak, viewing that as the time as of which the land now owned by Oletsky et al. became landlocked and thus the time when the way of necessity arose. That is the error in this case.

Our cases speak of the facts as they existed at the time of the deed because under normal circumstances any prior contract is swallowed up in the deed and the cases which have reached the courts have contained no basis for a determination as of any prior time. In the usual case a deed follows within a reasonably short time after the contract.

At the time Smith contracted with the Kirbys it still possessed Lots 1, 2, and 3. It was the failure of Smith to perform under the terms of its contract, as found by the Circuit Court for Baltimore County when it passed the decree for specific performance, that caused the conveyance of Lot 4 to the Kirbys. At the time Grey Dawn, Smith's successor in title, conveyed Lot 2, which fronted on the highway, only a few days remained before the expiration of the three-year period specified in the contract for the construction of streets, which construction would have made unnecessary the conveyance of Lot 4 to the Kirbys. Since specific performance was required the following year, it becomes obvious that we are not here faced with a mere failure by a few days to complete the required roads because a court of equity in that circumstance would not have directed the conveyance, regarding the contentions as made moot by the ultimate completion of the roads. We infer that the roads have never been completed. We have here a failure to comply with the terms of paragraph 5 of the contract between Smith and the Kirbys, which failure was known by Grey Dawn at the time that Grey Dawn stripped itself of an outlet to the highway through Lot 2.

It will be recalled that Tiffany said, actually quoting from *Bihss v. Sabolis*, 322 Ill. 350, 352, 153 N. E. 684 (1926), "The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." It will further be recalled that Chief Judge Alvey for this Court in *Burns*, 62 Md. at 472, observed, "[W]here the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to

be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds." To permit a land owner, after contracting to sell interior land but retaining land fronting on the highway, to divest himself of his highway frontage and then to successfully claim a way of necessity over that which he first contracted to sell at a given price, not only would be to permit him unilaterally to change the terms of the contract to the detriment of the person to whom he was selling, but would be directly contrary to the above quoted authority. Given the proposition that there is no law prohibiting a landowner from cutting himself off from all access to his land, we hold that whether a way of necessity exists here must depend upon the facts at the time of the original contract between Smith and the Kirbys in 1958. The Kirbys bargained for roads, which would not have been constructed at their expense, or access to the highway through Lot 4 if Smith failed to construct the roads. Obviously, the expense of constructing and maintaining any access road through Lot 4 would be on the Kirbys. They had not the slightest reason to think in terms of there being a way of necessity for the other land of Smith through Lot 4 because Smith owned a substantial amount of highway frontage and Smith, therefore, would not have been entitled to a way of necessity. Accordingly, we conclude that a fair construction of the acts of the parties as of the time of the contract in 1958 is that there was no intent to create a way of necessity. Therefore, we hold that the chancellor erred in concluding that a way of necessity was created. Our decision here is in no way inconsistent with *Condry v. Laurie, supra,* 184 Md. 317, nor with *Johnson v. Robinson, supra,* 26 Md. App. 568.

> *Decree reversed and case remanded for passage of a decree in conformity with this opinion; appellees and cross-appellants to pay the costs.*

Deer Park Road

Lot 1    Lot 2    Lot 3

80' strip

Lot 4

10 acres ±

Smith to Kirby
to
Appellants

Lot "A"

Appellees' land