## NELLIE M. MICHAEL *v.* LAURIE E. NEEDHAM ET AL.

[No. 956, September Term, 1977.]

*Decided April 14, 1978.*

The cause was argued before GILBERT, C. J., and MASON and LISS, JJ.

*Elwood E. Hauver* for appellant.

*George E. Snyder, Jr.,* with whom were *Kenneth J. Mackley* and *Mackley & Gilbert* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

This appeal arises out of a dispute between owners of adjoining tracts of land over the alleged existence of a right of way of necessity claimed by the owner of a "landlocked" property, Nellie M. Michael, appellant, over the tract of land owned by the appellee, Laurie E. Needham.

The dispute had its origin in the fact that prior to September 22, 1931 one Raleigh Sherman was the owner of two separate tracts of land which he treated as a unitary tract. He died in 1931 owning both tracts. One of the parcels was a 61.5 acre wooded tract and it adjoined a 238 acre parcel known as the "Lower Farm." The 61.5 acre tract was to the east of and uphill from the Lower Farm. The closest county road was Mill's Road, and it traversed the Lower Farm across the center of the tract in a north-south direction dividing the farm into its eastern and western portions. The eastern portion of the Lower Farm separated the 61.5 acre wooded area from access to Mill's Road. On September 22, 1931 the executor of Sherman's estate sold the 61.5 acre tract at public sale and a deed dated January 12, 1932 was delivered to the purchaser, Charles Hartle and his wife. That deed, for reasons not disclosed to the trial court, was not recorded until December 26, 1939. Subsequently, the tract was conveyed on June 11, 1946 to Boyd J. Michael, Sr. and Nellie M. Michael, his wife — Boyd J. Michael having since died and his wife being the sole appellant in this proceeding.

The 238-acre parcel, the contract for sale of which was also entered into on September 22, 1931, was conveyed by deed dated December 23, 1934 from the executor to Victor Smith and his wife. They, by deed dated December 31, 1954, conveyed the Lower Farm to Lester Shimp and Clara Shimp, his wife. The Shimps, in turn, by deed dated June 29, 1973, conveyed the tract to Harry Wolfe and Mary Wolfe, his wife. The Wolfes decided to subdivide and develop the Lower Farm and had the land surveyed and laid out into individual lots. The eastern portion of the Lower Farm was divided into five lots, designated as lots four, five, six, seven, and the 15.79 acre tract. By deed dated February 5, 1975 the Wolfes conveyed the 15.79 acre lot to the appellee, Laurie E. Needham. That deed represented the second conveyance out of the Lower Farm property. Each of the five lots laid out by Wolfe on the eastern portion of the Lower Farm was bounded by the 61.5-acre wooded tract on the east and by Mills Road on the west.

The lot owned by the appellee is improved by fences and numerous outbuildings, including an old stone house and an area designated, when Sherman owned the property, as the hogpen. The 61.5 acre tract was at that time used by Sherman for the purpose of raising timber, and testimony was adduced at the trial of this case that Sherman used a right of way passing between the stone house and the hogpen for access to the timber located up the hill from the Lower Farm. It is conceded that unless the appellant does in fact have a right of way over some part of the eastern portion to Lower Farm, she has no access to the wooded tract from Mills Road, and the tract is effectively "landlocked."

The dispute between the parties evidenced itself in an incident which occurred in April of 1975. At that time, Boyd Michael, Jr., the son of the appellant and her deceased husband, had crossed the appellee's land on foot to go to the 61.5 acre tract and was returning when he was accosted by the appellee, who called to him to get off the property. He stated that he had a right of way and she replied that if he continued to enter the property he would be arrested for trespassing.

The appellant thereupon filed suit in the Circuit Court for Washington County, praying that an injunction issue against the appellee's further interference with the appellant's continued use of the alleged right of way. A hearing was held at which numerous witnesses were produced by both sides to the controversy and exhibits were placed into evidence. At the conclusion of the case, the chancellor signed an order dismissing the appellant's bill of complaint but concluding that "the Michaels [(appellants)] had a way of necessity over the land of Harry Wolfe [(appellee's predecessor in title)] when Wolfe acquired the land in 1973"; however, "[w]here the right of way of necessity should now go is not before the court; but the court does decide the issue that under all circumstances, the plaintiff has no right of way over the land of the Defendant." It is from that order that the instant appeal was taken.

There are two questions presented in this appeal. The first is whether the appellant has established the existence of a

way of necessity over the Lower Farm for access to the wooded 61.5 acre lot owned by her. The second question is whether the location of the right of way of necessity can be changed by the subsequent sale and division of the servient land. We shall answer the first question in the affirmative and, in view of the factual circumstances in this case, the second in the negative.

## I.

In order to establish a right of way of necessity, it must be shown that sometime in the past the land for the benefit of which the easement is claimed and that over which it is claimed belonged to the same person. *Johnson v. Robinson,* 26 Md. App. 568, 338 A. 2d 88, *cert. denied,* 276 Md. 748 (1975). "[A] right of way of necessity can only be raised out of the land granted or reserved by the grantor, and never out of the land of a stranger." *Oliver v. Hook,* 47 Md. 301, 310 (1877); 2 G. Thompson, *Commentaries on the Modern Law of Real Property* Section 362 (J. Grimes ed. 1961). An easement by implication must arise at a time when there is unity of title. *Hancock v. Henderson,* 236 Md. 98, 202 A. 2d 599 (1964); *Hansel v. Collins,* 180 Md. 209, 23 A. 2d 686 (1942).

There are two types of ways of necessity, those created by implied reservation and those created by implied grant. *Dalton v. Real Estate and Improvement Co.,* 201 Md. 34, 92 A. 2d 585 (1952); *Slear v. Jankiewicz,* 189 Md. 18, 54 A. 2d 137 (1947); *Jay v. Michael,* 92 Md. 198, 48 A. 61 (1900). A "quasi-easement" is a legal fiction developed to overcome the legal premise that an easement cannot exist over one's own land. It arises where, prior to division of the unitary tract without express reservation or grant of an easement, a part of the land is used by the owner for the benefit of another part. *Johnson v. Robinson, supra; Tiffany, Real Property,* Section 781 (3d ed.). "It is also well settled that such *quasi* easements as pass by implication and ripen into easements for the benefit of the dominant estate, must have been, and must be at the time of the conveyance, apparent and continuous." *Kelly v. Nagle,* 150 Md. 125, 132, 132 A. 587 (1926).

Judge Smith, speaking for the Court of Appeals in *Shpak v. Oletsky,* 280 Md. 355, 373 A. 2d 1234 (1977), discussed the presumption of intent to create an easement which arises from a finding of necessity. Quoting Jones, *Easements,* Section 304 (1898), he stated:

" 'It is not the necessity which creates the right of way, but the fair construction of the acts of the parties.' The necessity merely furnishes evidence as to the real intention of the parties. 'For the law will not presume that it was the intention of the parties that one should convey land to the other in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law under such circumstances will give effect to the grant according to the presumed intent of the parties.' " (Footnotes omitted). *Id.* 280 Md. at 361-62.

The degree of necessity which must be shown in order to give rise to this presumption of intent to create an easement differs between implied grants and implied reservations. In *Dalton v. Real Estate and Improvement Co., supra,* 201 Md. at 47, the Court stated:

"A distinction has been maintained in the law between implied grants and implied reservations. If an easement is continuous and apparent and necessary to the reasonable enjoyment of the premises granted, it will be implied that the grant included the easement. However, if a grantor intends to reserve any rights or uses in or over the tenement granted, he must reserve them expressly, and the only exception is of easements, including ways, of actual, strict necessity. The reason for the last rule is said to be that a grantor cannot derogate from his grant. There is a discussion of the two rules and examples of their application in *Slear v. Jankiewicz* [*supra*]. See also *Mitchell v. Seipel* [53 Md. 251 (1880)]."

Though the present dispute is over the burdens and benefits to the land of distant successors in interest to Raleigh Sherman, resolution of this case must depend upon the presumed intention of the parties to the two original deeds executed by Sherman's executor.

In *Hancock v. Henderson, supra,* the Court of Appeals noted that in order for there to be a way of necessity it must have been created by implication in the original division of the unitary tract into its dominant and servient tenements. The remote grantees cannot create the way of necessity nor can it be established by a subsequent necessity. The Court stated:

> "The theory is that such an easement, being appurtenant, passes with each conveyance to subsequent grantees. *Douglass v. Riggin,* 123 Md. 18, 23, 90 Atl. 1000. Hence a remote grantee of land not being used at the time of severance may nevertheless, when the use becomes necessary to the enjoyment of his property, claim the easement under his remote deed. See *Finn v. Williams,* 33 N.E.2d 226 (Ill.) which is the subject of an annotation in 133 A.L.R. 1393 on the effect of non-use of a way of necessity. This rule is consonant with the generally held view that non-use alone is not sufficient to extinguish a way by necessity. *Knotts v. Summit Park Co.,* 146 Md. 234, 126 Atl. 280." *Id.* 236 Md. at 105.

It becomes necessary then that we determine when the way of necessity arose in this case. The three time periods when this arguably could have occurred would be the date of the contract, the date of the deed or the date of recordation. Appellee urges that we determine the date of recordation to be controlling. If we accepted this proposition then we would be required to determine that the right of way arose, if at all, by reason of an implied reservation of the easement rather than by an implied grant, and we would be required to test the creation of the right of way by the stricter standard of necessity. We cannot, however, accept this contention because of the holding of the Court of Appeals in *Shpak v.*

*Oletsky, supra,* 280 Md. at 356, "that the date for determining whether a way of necessity was created by an implied reservation was that of the contract between the original parties and not that of the ultimate deed. . . ." Although in *Shpak* the Court was concerned with an implied reservation of an easement, it would seem to follow that the same time period would be controlling in the creation of a way of necessity by implied grant.

In this case the contracts of sale for the dominant and servient tenements were executed simultaneously on September 22, 1931. In *Dalton, supra,* 201 Md. at 47, in considering a similar transaction, the Court said:

> "If, however, there is a simultaneous conveyance by the common owner of both the serviently and dominantly used parts of land, the more liberal implied grant rule applies and not the more strict implied reservation test. A partition is held to be a simultaneous conveyance.
>
> "*Jones on Easements,* [*supra*], puts it in this fashion at page 115:
>
>> 'Sec. 139 * * * The legal effect, however, of simultaneous conveyances of parts of an estate is to pass to each grantee all those apparent and continuous easements which are necessary to the enjoyment of the granted premises. There is a grant and no implied reservation, so that all such cases are brought within the rule considered in the first division of this chapter.' "

Applying this more relaxed standard, we conclude that the chancellor was correct in finding that an easement of necessity did exist over the eastern portion of the Lower Farm from Mill's Road to the 61.5 acres of the wooded tract. The testimony of Webster Jamison, a 73-year old gentleman who resided in the area all his life, established that when Sherman owned both tracts he used a road between the stone house and the hogpen to reach the upper 61.5 acres. He also stated that Mr. Hartle and the older Mr. Michael used the

same road for access to the wooded tract during their respective ownerships of the 61.5 acres. Jamison testified that he himself utilized the identical route in hauling wood from the tract to the sawmill established by Mr. Michael on the wooded tract. Other witnesses called by the appellant confirmed that the particular dirt road was the only roadway leading to the wooded tract and that it had been so used since Raleigh Sherman's tenure of the unitary tract.

Boyd Michael, Jr. stated that from the time his father bought the wooded tract in 1946, he and his father used the dirt road in the operation of a sawmill business. The son continued the operation of the sawmill for five years after his father died in 1962, using the dirt road during that entire period. He described the road as being "[d]itched out or hollowed out" from extensive use which included the hauling of trees in a 12-ton truck. He stated that access to the sawmill was gained by turning left off of Mill's Road onto the eastern portion of the Lower Farm and continuing on the dirt road which passed between an old stone house he referred to as the Jamison place, and the hogpen. He further stated that since 1967 he had continued to use the right of way to haul dirt, to hunt game and mushrooms and to check the property.

The appellee, testifying in her own behalf, stated that before she purchased her 15.79 acre tract from the Wolfes, she inspected the premises. She found no visible tire marks and noticed a large pile of brush toward that part of her lot closest to the appellant's property. She stated that she saw a dirt area coming off of Mill's Road on a level plane for about 25 feet; then sinking into a 25-foot depression, five or six feet wide, filled with jagged rocks; then rising into a sharp incline covered by dense brush which in her opinion would be hardly passable by jeep. She also stated that neither Mr. Wolfe nor the realtor informed her of the existence of a right of way over her property and that she recalled specifically asking about such a right of way at the time of settlement. The other witnesses produced by the appellee were somewhat equivocal in their testimony concerning the disputed right of way.

In the light of this factual testimony we cannot find that the chancellor was clearly erroneous in his conclusion that a

right of way by necessity was established somewhere along the eastern portion of the Lower Farm. Maryland Rule 1086.

## II.

We reach a different conclusion concerning the chancellor's determination that the appellant had no right of way over the land of the appellee. The chancellor gave no reason for this finding and we are unable to discover a reason from our reading of the record. The testimony of the various witnesses clearly established not only the existence of the right of way by necessity but its general location as well. There was absolutely no evidence that the right of way proceeded in any direction other than over the tract now owned by the appellee. At the time of the original conveyance the right of way existed between the stone house and the hogpen. Beyond there the continued location of the right of way up the hill is less definite but ascertainable.

In *Sibbel v. Fitch,* 182 Md. 323, 326-28, 34 A. 2d 773 (1943), the Court of Appeals had before it the location of a right of way expressly granted but not by a specific description. In discussing the location of a right of way under these circumstances, the Court said:

> " 'Where a way is granted without fixing its location, but there is a way already located at the time of the grant, such way will be held to be the location of the way granted unless a contrary intention appears.' 28 C.J.S., *Easements,* Sec. 80, Subsec. 5.

> "This principle of law is well settled, and after the location of the right of way which has been granted in general terms has been defined and fixed by the owners of the dominant and servient tenements by user in a particular location over a long period of time, it becomes as definitely established as if the grant or reservation had so located it by metes and bounds and the location of the right of way as thus defined can only be changed by agreement of the owners of the dominant and servient tenements.

. . .

"See also *Kessler v. Bowditch,* 223 Mass. 265, 111 N. E. 887, and *Jones, Easements,* Pars. 330 and 333. The last two references deal with the location of a way of necessity, and while we are not dealing with a way of necessity, the right of way having been expressly reserved by deed of 1866, the same principles with reference to the location of a way of necessity and the location of a way reserved in general terms are applicable."

*See Taylor v. Solter,* 247 Md. 446, 231 A. 2d 697 (1967); *Allori v. Dinenna,* 188 Md. 1, 51 A. 2d 819 (1947).

We recognize that the appellee has made extensive improvements to her property in the area where the right of way of necessity is alleged to have traversed. We also recognize that the right of way by reason of its disuse would require substantial expenditures to permit its use for access to the wooded lot. Under the circumstances we will remand this case to the trial court. We would anticipate that the parties with the assistance of the chancellor should be able to agree on the location of a right of way which would be least onerous to the appellee and passable with reasonable convenience by the appellant. In the absence of such an agreement, it will be the responsibility of the chancellor to take such testimony as might be required and to locate the right of way after due consideration of the equities of the matter.

> *Order vacated; remanded for further proceedings not inconsistent with this opinion; costs to be paid by appellees.*